# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **ERICA L. WATSON,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No.:  2:03-CV-2202-RDP** |
| | } | |
| **LABORATORY CORPORATION OF** | } | |
| **AMERICA HOLDINGS d/b/a** | } | |
| **LABCORP,** | } | |
| | } | |
| **Defendant.** | } | |

## MEMORANDUM OPINION

Pending before the court is Defendant Laboratory Corporation of America Holdings d/b/a LabCorp's ("LabCorp") Motion for Summary Judgment filed on November 8, 2004.  (Doc. #19). On November 11, 2004, Plaintiff filed an Unopposed Motion for Extension of Time (Doc. #23), which the court granted on November 16, 2004.  On December 14, 2004, Plaintiff filed her opposition to summary judgment.  (Docs. #24-#25).  LabCorp replied on January 3, 2005.  (Docs. #28-#29).

## BACKGROUND

Plaintiff's Complaint against Defendant alleges gender/pregnancy discrimination in violation of Title VII of the Civil Rights Act of 1964 as amended ("Title VII") (Count I); race discrimination in violation of Title VII and 42 U.S.C. § 1981 (Count II); and disability discrimination in violation of the Americans with Disabilities Act ("ADA") (Count III).[1]  (Doc. #1).  More specifically, Plaintiff

---

[1] Plaintiff's Complaint also included claims under the Family and Medical Leave Act ("FMLA").  However, in her opposition brief, Plaintiff has indicated that she is abandoning her FMLA claims.  (Doc. #23 at 43 n.5).

complains that Defendant discriminated against her due to her race, asthma, and/or HIV positive status (Counts II and III) in denying her certain transfer requests. Plaintiff also maintains that her employment with LabCorp was unlawfully terminated (Counts I, II, and III). As discussed more fully below, Defendant's Motion for Summary Judgment is due to be granted because no material factual disputes exist, and Defendant is entitled to judgment as a matter of law.

## FACTS[2]

LabCorp hired Plaintiff on October 4, 1999, as a specimen prep technician in the cytology department of its laboratory facility in Birmingham, Alabama. AF No. 1. In that position, Plaintiff was responsible for labeling each specimen that arrived at the laboratory with a number, placing the specimens in an aluminum rack, and putting them in a cyto machine to be processed. AF No. 2.

Plaintiff is an African-American female, who suffers from asthma (Plaintiff's Additional Undisputed Fact ("AF") No. 1), and learned she was HIV positive in October 1999. AF No. 34. While working for Defendant, Plaintiff became pregnant and gave birth in April 2002. AF No. 35. At the time Plaintiff was hired, her Team Leader was Marilyn Shedrick ("Shedrick"), who is African-

---

[2]The court views the facts in the light most favorable to Plaintiff, the non-movant. The facts discussed in this section were compiled by comparing Doc. #21 with Doc. #24 at 1-5. The designation "AF" stands for admitted fact and indicates a fact offered by Defendant that Plaintiff has admitted in their written opposition to summary judgment, in their deposition testimony, or by virtue of any other evidence offered in support of their case. Whenever Plaintiff has adequately disputed a fact offered by Defendant, the court has accepted Plaintiff's version. The court's numbering of admitted facts (*e.g.*, AF No. 1) corresponds to the numbering of Defendant's Statement of Facts. A number following a decimal point corresponds to the particular sentence within the numbered statement of facts. For example, AF No. 55.2 would indicate the second sentence of paragraph 55 of Defendant's Statement of Facts is the subject of the court's citation to the record. The court recognizes that Plaintiff's opposition also includes "Additional Undisputed Facts" and "Disputed Facts" sections containing another 151 paragraphs of information. Doc. #24 at 5-20. To the extent any of these additional facts require discussion, the court has incorporated them into its analysis section.

American.  AF No. 3.  Shedrick reported to Donna Griffith ("Griffith"), who held the position of Supervisor.  AF No. 4.  Griffith in turn reported to Margaret Henderson ("Henderson"), the Laboratory Manager.  AF No. 5.  Shedrick ceased being Plaintiff's Team Leader in February 2000. AF No. 6.1.  At that time, Reba Moore ("Moore") became the team leader of the cytology department and held that position through December 2000.  AF No. 6.2.  Shedrick took over the Team Leader position again in 2001.  AF No. 7.0.

LabCorp distinguishes between policy violations and performance deficiencies.  AF No. 8.1.[3] During her employment with LabCorp, Plaintiff was disciplined for both performance deficiencies and policy violations.  AF No. 9.1.[4]  On November 5, 1999, Shedrick gave Plaintiff a written counseling because Plaintiff's productivity was very low on November 1, 2 and 3, even though she worked overtime.  AF No. 10.1.[5]  Shedrick restricted Plaintiff's job duties to accessioning specimens only (i.e., assigning a specific number to the slide), and instructed her not to work any overtime.  AF No. 10.2.

On December 15, 1999, Shedrick provided Plaintiff a counseling based on Plaintiff's failure to complete certain documents called IOR forms on a daily basis.  AF No. 12.1.[6]; AF No. 12.2. LabCorp uses IOR forms to track an employee's productivity as well as any performance

---

[3]Plaintiff has admitted this fact subject to clarification of its context in her brief.  Griffith specifically testified: "Policy violation would be bringing a gun to work or leaving your job without permission, where a corrective action plan would be put in place if the individual was not doing their job in an appropriate time frame or was mishandling specimens."  (Doc. #25 at Ex. 1 at 22).

[4]Plaintiff has admitted this fact subject to clarification of its context in her brief.

[5]Plaintiff has admitted this fact subject to clarification of its context in her brief.

[6]Plaintiff has admitted this fact subject to clarification of its context in her brief.

3

deficiencies.  AF No. 12.3.[7]  On May 2, 2000, Plaintiff received counseling because she was late

eight times in the month of April and on ten separate days that same month had not worked at least

eight hours a day.  AF No. 13.

On December 17, 2001, Plaintiff was reprimanded for being late to work on three occasions,

and working unauthorized overtime on three others, between December 2 and December 17, 2001.

AF. No. 14.  In the written reprimand, Shedrick stated that she "[d]iscussed the problem with Erica

and clearly stated any future violation will result in termination."  AF No. 15.  On December 19,

2001, Plaintiff was placed on a Corrective Action Plan ("Plan").  AF No. 16.1.  The Plan stated that

"Erica has consistently displayed low productivity when performing her work duties.   This low

productivity is evident in all aspects of her work assignments."  AF No. 16.  The Plan also stated that

"Erica shows total disregard for critical turn around time that affects the entire cytology department.

Nothing seems to have impressed upon her the need to improve."  AF No. 16.  In the Plan, Shedrick

also noted that "Erica also consistently fails to turn in her Data Collection Form (DCF) in a timely

manner.  On many occasions when she does turn them in they are incomplete.  Also, they reflect

inconsistencies with her punch detail time sheet."  AF No. 17.  The Plan also provided that "[i]n the

past pay period Erica worked 6.24 hours in overtime to complete tasks which should have been done

in an eight hour work day.  Most of the overtime was unauthorized by a group leader or supervisor.

The overtime worked was not reflective of the amount of work that was done."  AF No. 18.

During December 2001 and January 2002, Plaintiff was late to work on a number of

occasions:

---

[7]Plaintiff did not specifically respond to the third sentence of paragraph 12 of Defendant's
Statement of Undisputed Facts; accordingly, the court deems the facts asserted therein to be either
admitted or undisputed.

- On December 17, 2001, Plaintiff clocked in at 8:37 a.m.  AF No. 19.  Her scheduled start time on December 17, 2001 was 8:30 a.m.  AF No. 19.2.

- On December 19, 2001, Plaintiff clocked in at 8:52 a.m.  AF No. 20.  Her scheduled start time on December 19, 2001 was 8:30 a.m. also.  AF No. 20.

- On December 28, 2001, Plaintiff clocked in at 10:27 a.m.  AF No. 21.1.  Her scheduled start time on December 28, 2001 was 8:30 a.m.  AF No. 21.

- On January 3, 2002, Plaintiff clocked in at 11:14 a.m.  AF No. 22.  Once again, her scheduled start time on January 3, 2002 was 8:30 a.m.  AF No. 22.2.

- On January 7, 2002, Plaintiff clocked in at 8:43 a.m.  AF No. 23.1.  Her scheduled start time on January 7, 2002 was 8:30 a.m.  AF No. 23.

- On January 8, 2002, Plaintiff clocked in at 8:56 a.m.  AF No. 24.  Her scheduled start time on January 8, 2002 was 8:30 a.m.  AF No. 24.

- On January 10, 2002, Plaintiff clocked in at 8:41 a.m.  AF No. 25.  Her scheduled start time on January 10, 2002 was 8:30 a.m.  AF No. 25.2.

- On January 14, 2002, Plaintiff clocked in at 8:43 a.m.  AF No. 26.  Her scheduled start time on January 14, 2002 was 8:30 a.m.  AF No. 26.

- On Friday, January 18, 2002, Plaintiff clocked in at 8:53 a.m.  AF No. 27.  Her scheduled start time on January 18, 2002 was 8:30 a.m.[8]  AF No. 27.

Shedrick completed paperwork on Wednesday, January 23, 2002, stating that Plaintiff was to be terminated "effective today."  AF No. 30.  The actual effective date of Plaintiff's termination was January 25, 2002.  AF No. 31.  LabCorp informed Plaintiff of her termination on Monday, January 28, 2002.  AF No. 32.  After her termination from LabCorp in January 2002, Plaintiff did not look for other employment until June or July 2002.  AF No. 33.[9]  She began working again in August

---

[8]Plaintiff was more than twenty minutes late to work on January 18, 2002, because of "heavy traffic" during her commute from her home in Tuscaloosa, Alabama.  AF No. 28.

[9]Plaintiff has admitted this fact subject to clarification of its context in her brief.

2002. AF No. 33.[10]

The parties have presented information about other persons who worked at LabCorp so that the court can assess whether those individuals are "comparators" *vis a vis* Plaintiff. LabCorp placed Robin Johnson ("Johnson") on a Performance Improvement Plan ("PIP") on February 6, 2002, because she had checked off specimens from packing lists that could not be located in the laboratory. AF No. 46. After being placed on the PIP, Johnson had no further performance deficiencies. She has not received any other write-ups for poor job performance. AF No. 47. Johnson has never been written up for tardiness or working unauthorized overtime. AF No. 48.2.

LabCorp hired Diane Turner ("Turner") on August 2, 1999, as a laboratory assistant in its Birmingham, Alabama, facility. AF No. 49. On May 10, 2000, Turner received her first disciplinary action: a counseling for not calling in to report off work on one occasion. AF No. 50. Five months later, on October 5, 2000, Turner received her second write-up, a reprimand for attendance problems. AF No. 51. Three months later, on January 24, 2001, Turner received a third write-up because she called a co-worker instead of a supervisor to report off work on one occasion. AF No. 52.[11] LabCorp thereafter discharged Turner on November 8, 2001, because she compromised patient specimens, refused to cooperate with her immediate supervisor, and failed to follow existing guidelines set by her department. AF No. 53.

On July 27, 2000, Tarakisha Hodo ("Hodo"), who is African American, received a reprimand for being late twenty-one days in the preceding six weeks and working less than eight hours per day

---

[10]Plaintiff did not specifically respond to the second sentence of paragraph 33, so the court deems it to be admitted.

[11]Plaintiff did not specifically respond to the second sentence of paragraph 52, so the court deems the facts asserted therein to be either admitted or undisputed.

without permission on twelve occasions.  AF No. 54.  More than six months later, on February 6, 2001, Hodo received a reprimand for taking a forty minute lunch (instead of thirty minutes) and taking her break later than scheduled.  AF No. 55.  On June 4, 2001, Hodo received another reprimand for continuing to be late five to eight days per pay period without permission.  AF No. 56. On July 20, 2001, Hodo improperly processed two slides and, on July 25, 2001, she took a fifty minute lunch (instead of her scheduled thirty minutes) and then worked twenty minutes of unauthorized overtime.  AF No. 57.  LabCorp fired Hodo the following week.  AF No. 58.  The parties agree that Hodo was never placed on a PIP.  AF No. 59.

Plaintiff filed an EEOC charge of discrimination on May 14, 2002, alleging she was terminated because of her race, her pregnancy, and because she was HIV positive.  AF No. 67.  On August 7, 2002, Plaintiff filed an amended EEOC charge of discrimination.  AF No. 68.  Plaintiff amended her original charge by checking the "Disability" box and stating that LabCorp has "greater than 100" employees.  AF No. 68.

## STANDARD OF REVIEW

A party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED.R.CIV.P. 56(c).  The moving party is entitled to summary judgment if it can show the court that the nonmoving party will not be able to fulfill its burden of proof at trial.  *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).  After the moving party shows that no issue of material fact exists, the burden shifts to the nonmoving party to demonstrate that a genuine issue of material fact does exist.  *Id*. at 116.  The nonmoving party cannot meet this burden simply by relying

upon the allegations in its pleadings, but must set forth specific facts demonstrating the existence of a genuine issue for trial. *Id*. at 1116 n.3.

Summary judgment must ben entered against any party which "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial." *Kramer v. Unitas*, 831 F.2d 994, 997 (11th Cir. 1987). "[T]he summary judgment rule applies in job discrimination cases just as in other cases." *Chapman v. AI Transp.*, 229 F.3d 1012, 1026 (11th Cir. 2000).

## DISCUSSION

### I.    Timeliness and Scope of Charge

As an initial matter, the court must determine whether Plaintiff's non-discharge claims, that were not referenced in her EEOC charge (or the amendment to it) and which arose before the 180-day period immediately preceding the filing of her charge, are properly before the court.  They are not.

Plaintiff filed her EEOC charge on May 14, 2002.  Therefore, that charge covered the 180-day time period beginning on November 15, 2001. *See Delaware State Coll. v. Ricks*, 449 U.S. 250, 256 (1980) (holding EEOC charge must be filed within 180 days of the alleged adverse employment action).  The adverse employment action about which Plaintiff complains in her charge is her dismissal from LabCorp, which was effective January 23, 2002 (and which is well within the 180-day time period).  However, any other Title VII or ADA claims, which can be characterized as discrete discriminatory acts, such as the denial of a transfer to a billing position,[12] and that arose prior

---

[12]In her Complaint, Plaintiff claims she was denied the transfer because of her pregnancy or because she had asymptomatic HIV.  (Doc. #1 ¶ 19).

to November 15, 2001, are necessarily time-barred.[13]

In *National R.R. Passenger Corp. v. Morgan*, the Supreme Court has made clear that "*[e]ach discrete discriminatory act starts a new clock for filing charges alleging that act. The charge, therefore, must be filed within the [180 day] time period after the discrete discriminatory act occurred.*" *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 122 (2002) (emphasis supplied). As the Eleventh Circuit has stated:

> In *National Railroad Passenger Corporation v. Morgan, supra*, the Court considered claims of retaliation and hostile work environment brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C.2000e *et seq.*, against the railroad by a former black employee. Title VII requires plaintiffs to file charges with the Equal Employment Opportunity Commission ("EEOC") either 180 or 300 days "after the alleged unlawful employment practice occurred." 42 U.S.C.2000e-5(e)(1). While some of the discriminatory acts Morgan alleged took place within this statute of limitations period, many occurred earlier. The Court, therefore, was forced to

---

[13]Plaintiff's argument to the contrary–that the other Title VII or ADA claims that predate her separation from LabCorp are somehow encompassed within the scope of the May 14, 2002 charge– is misplaced. As stated in *Ward v. Florida*, 212 F. Supp. 2d 1349 (N.D. Fla. 2002), one of the decisions upon which Plaintiff relies,

> When the allegations in the federal action involve **conduct committed subsequent to the filing of an EEOC charge**, it is reasonably related to the charged conduct where: (1) the subsequent conduct would fall within the reasonably expected scope of the EEOC investigation of the administrative charges; (2) the claim is one alleging retaliation against the employee for filing an EEOC charge; or (3) the plaintiff alleges "further incidents of discrimination carried out in precisely the same manner alleged in the EEOC charge." *Butts v. City of N.Y. Dep't of Hous. Preservation & Dev.*, 990 F.2d 1397, 1401 (2nd Cir.1993) (citation omitted).

*Ward*, 212 F. Supp. 2d at 1357 (emphasis added); *see also Buzzi v. Gomez*, 62 F. Supp. 2d 1344, 1351-52 ("If the **allegations of the subsequent complaint** could have been a reasonably expected out-growth of the EEOC's investigation of the charged conduct, the omitted allegations of discrimination are deemed within the scope of the EEOC filing.") (emphasis added). Therefore, because Plaintiff's other Title VII and ADA claims arose before her discharge, they are not subsequent allegations and are not reasonably related to Plaintiff's charge. The fact that the EEOC may have identified and/or considered these allegations as background information related to its investigation of Plaintiff's discharge claim does not legally revive these otherwise stale claims.

determine whether a trial court could consider those prior acts in determining liability. The Court issued a twofold ruling. First, it held that "discrete discriminatory acts [such as termination, failure to promote, denial of transfer, or refusal to hire] are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *National R.R. Passenger Corp.*, 122 S. Ct. at 2072. Second, and more important for our case, the Court held that a hostile work environment claim should be reviewed in its entirety, so long as one of the events comprising it fell within the statute of limitations.

*Shields v. Fort James Corp.*, 305 F.3d 1280, 1281-82 (11th Cir. 2002).  Plaintiff's non-discharge claims, without question, involve discrete acts that started the clock running for purposes of filing a charge.  Because they are not the subject of any timely charge in this case, they are not actionable.[14]

## II.      Plaintiff's Discharge Claim

### A.      Plaintiff's Work History

Plaintiff worked for LabCorp from October 1999 until January 2002, a time period of two years and three months.  The undisputed facts of this case show her work record at LabCorp is marked with tardiness and other work related deficiencies.  On November 5, 1999, Plaintiff received counseling for low production.  On November 16, 1999, she received a reprimand and half-day suspension for continued low production.  On December 15, 1999, she received a counseling for not completing required paperwork on a timely basis.  Plaintiff received her first counseling for

---

[14]To the extent Plaintiff claims she should have received the accounts receivable position in the billing department, which she applied for on August 24, 2001, (*see* AF No. 65), her claim is wholly unsupported factually. LabCorp selected Norma Fason ("Fason") for this accounts receivable position based upon her ten plus years of medical billing experience along with her ICD-9 training and CPT coding knowledge.  AF No. 66.  Fason's start date with LapCorp was October 8, 2001.  AF No. 66.  Therefore, Plaintiff's claim is both untimely and also fails the "slap in the face" test.  That is, any disparities in qualifications between Fason and Plaintiff are not "so apparent as virtually to jump off the page and slap you in the face."  *Lee v. GTE Florida, Inc.*, 226 F.3d 1249, 1253 (11th Cir. 2000).

excessive tardiness on May 2, 2000.[15]   On December 17, 2001, she received a reprimand for a

combination of being tardy and working unauthorized overtime.  Shedrick discussed the reprimand

with Plaintiff, and made it clear to her that any future violation would result in her separation from

LabCorp.

On December 19, 2001, Plaintiff was placed on a Plan, which states in part:

> In the past pay period Erica worked 6.24 hours in overtime to complete tasks that
> should have been done in an 8 hour work day.  Most of the overtime was
> unauthorized by a group leader or supervisor.  The overtime worked was not
> reflective of the amount of work that was done.  Also, she did not turn in her weekly
> DCF and when her Group Leader requested it only one day, Monday, was completed.
> Upon review of her DCF the times indicated did not reflect the time actually worked
> . . . .
>
> Erica has been counseled, reprimanded, and suspended for low productivity and
> adjusting her work schedule without supervisory permission. . . .
>
> Erica continues to show a flagrant disregard for policies and performance
> requirements.

In the five weeks after receiving the December 17, 2001 reprimand and being placed on the

December 19, 2001 Plan, Plaintiff was late for work eight times, with the last time occurring on

Friday, January 18, 2002, which her supervisor, Shedrick, documented on January 23, 2002:

---

[15]Plaintiff points out that Terry Carter, who was one of the group leaders during Plaintiff's
employment with LabCorp, initialed and executed a questionnaire during the EEOC investigation
in which she stated, "During the time I was team leader I don't recall CP [charging party] being late."
AF No.142 (Doc. #24 at 20 ¶ 142; Doc. #28 at 16 ¶ 142).  This statement does not create a material
factual dispute:  "Not recalling" and "knowing definitively" are significantly different levels of
certainty, especially as Ms. Carter was not Plaintiff's team leader.  Further, Plaintiff herself, while
disagreeing with statements made about her productivity in the Plan, does not take any issue with
her reported tardiness, in her statement of facts.  (Doc. #24 at 12 ¶ 69). *See Evans v. Stephens*, 407
F.3d 1272, 1278 (11th Cir. 2005) (en banc) ("When the nonmovant has testified to events, we do not
(as urged by Plaintiffs' counsel) pick and choose bits from other witnesses' essentially incompatible
accounts (in effect, declining to credit some of the nonmovant's own testimony) and then string
together those portions of the record to form the story that we deem most helpful to the nonmovant.")
(footnote omitted).

11

Since Erica was last reprimanded on 12/17/02 [sic: should be 12/17/01] she has been tardy eight times. She has also used 46 hours of unscheduled time off. In view of the many warnings and reprimands Erica has been given we will terminate her employment effective today.

Shedrick also commented: "Erica has been warned several times!"

## B. *Prima Facie* Case

"In order to establish a *prima facie* case, a plaintiff must present 'evidence adequate to create an inference that an employment decision was based on an [illegal] discriminatory criterion. . . .'" *Dent v. Federal Mogul Corp.*, 129 F.Supp. 2d 1311, 1314 (N.D. Ala. 2001) (quoting *O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 312 (1996) (quoting *Teamsters v. United States*, 431 U.S. 324, 358 (1977))). In this circumstantial evidence case alleging discrimination, the four *prima facie* elements that Plaintiff must establish are: 1) she belongs to a protected category; 2) she suffered an adverse employment action; 3) she was treated less favorably than other similarly situated employees outside of her protected class; and 4) she was qualified for the position. *See, e.g.*, *Holifield v. Reno*, 115 F.3d 1555, 1561-62 (11th Cir. 1997) (outlining *prima facie* elements for race discrimination claim). Therefore, the initial inquiry for the court is whether Plaintiff has adduced sufficient evidence of a *prima facie* case of discrimination.[16]

---

[16]For the purposes of summary judgment, LabCorp states it has conceded that Plaintiff is able to establish a *prima facie* case of discriminatory discharge under Title VII and the ADA as she was replaced by a white person, who was not pregnant, or HIV positive, and was non-asthmatic. (Doc. #20 at 6). According to LabCorp, its legitimate, nondiscriminatory reason for discharging Plaintiff: "a history of low productivity, tardiness, and working overtime without permission, culminating in 8 tardies in the 5 weeks after receiving a reprimand for attendance problems and being placed on a Corrective Action Plan." (*Id.*) The court notes that this concession is somewhat at odds with LabCorp's attack of Plaintiff's ability to show proper comparator evidence, which is customarily analyzed at the *prima facie* level. The court also observes that, separate and apart from this fairly non-substantive concession, LabCorp asserts (rather aggressively) that the persons Plaintiff claims to be comparators are not similarly situated to Plaintiff. Accordingly, the court must review whether Plaintiff can establish the third element of the *prima facie* case requirements before reaching the

In this case, the critical issue in analyzing Plaintiff's *prima facie* case is whether a similarly situated employee received more favorable treatment than Plaintiff.  In an effort to establish this prong, Plaintiff points to four other persons who worked at LabCorp and argues that some or all of these individuals are her comparators (i.e., they were treated less harshly than her despite their having nearly identical work histories).  LabCorp disputes the label of nearly identical and maintains that none of these witnesses is a suitable comparator.

The four comparators offered by Plaintiff are Robin Johnson, Diane Turner, Tarakisha Hodo, and Kendra Brown.  The standard this court must apply is now a familiar one:

> To show that employees are similarly situated, the plaintiff must show that the "employees are similarly situated in all relevant respects. . . .  In determining whether employees are similarly situated . . . it is necessary to consider whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways."

*Knight v. Baptist Hospital of Miami, Inc.*, 330 F.3d 1313, 1316 (11th Cir. 2003) (quoting *Holifield* 115 F.3d at 1562).  Additionally, the Eleventh Circuit has held that "[t]he comparator must be nearly identical to the plaintiff to prevent courts from second-guessing a reasonable decision by the employer." *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1091 (11th Cir. 2004) (internal citations omitted); *see also Manicci v. Brown*, 171 F.3d 1364, 1668-69 (11th Cir. 1999) ("We require that the quantity and quality of the comparator's conduct be nearly identical to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges.").  Where, as here, there is an absence of any other evidence suggesting that a decision was discriminatory, the existence of a similarly situated employee is critical to a plaintiff's ability to prevail on summary judgment.  *See Holifield*, 115 F.3d at 1562 ("*If a plaintiff fails to show the existence of a similarly*

---

pretext issue.

13

*situated employee, summary judgment is appropriate where no other evidence of discrimination is present.*") (emphasis in original) (citation omitted).

These principles have particular application in cases involving an employee who was discharged for the alleged violation of a work rule. A plaintiff fired for violating an employer's rules must show that the employer retained an employee outside the protected class whom the employer believed engaged in nearly identical rule violations. *Nix v. WLCY Radio*, 738 F.2d 1181, 1185-87 (11th Cir. 1984); *see also Jones v. Gerwens*, 874 F.2d 1534, 1540-42 (11th Cir. 1989), *modified by Jones v. Bessemer Carraway Medical Ctr.*, 137 F.3d 1306, 1311 n.6 (11th Cir. 1998) (holding that, in cases involving alleged racial bias in the application of discipline for violation of work rules, the plaintiff must show that the disciplinary measures enforced against him were more severe than those enforced against the other persons outside his protected class who were believed to have engaged in similar misconduct). "The Eleventh Circuit requires 'that the quantity and quality of the comparator's misconduct be nearly identical to prevent courts from second-guessing employer's reasonable decisions and confusing apples with oranges.'" *Vickers v. Federal Express Corp.*, 132 F.Supp. 2d 1371, 1380 (S.D. Fla. 2000)(quoting *Maniccia v. Brown*, 171 F.3d 1364, 1368-69 (11th Cir. 1999)); *see also Wilson* 376 F.3d at 1091 (requiring the comparator's situation to be "nearly identical.")

With these legal standards in mind, the court will analyze whether the individuals identified by Plaintiff are appropriate comparators.

### 1.    Robin Johnson

On February 6, 2002, Robin Johnson was placed on a PIP because she had checked off specimens from packing lists that could not be located in the laboratory. After being placed on the

PIP, Johnson had no further performance deficiencies.  She has not received any other write-ups for poor job performance, nor has she ever been counseled or reprimanded for being late or working unauthorized overtime.  Thus, Johnson's work history stands in stark contrast to that of Plaintiff, who was counseled for low productivity, tardiness, and working overtime without permission, culminating in eight tardies in the five weeks after already receiving a reprimand for attendance problems and being placed on a Corrective Action Plan.  Plaintiff and Johnson are not similarly situated, and Johnson is not an appropriate comparator with respect to Plaintiff.

### 2.      Diane Turner

Diane Turner was fired on November 8, 2001, because she compromised patient specimens, refused to cooperate with her immediate supervisor, and failed to follow existing guidelines set by her department.  LabCorp discharged Turner two months before Plaintiff.  Turner's prior history included a counseling for failing to report off work on one occasion, and, in October 2000, she received a reprimand for attendance problems.  After the October 5, 2000 reprimand, the only attendance related problem Turner had was a single instance, more than three months later, of reporting off work to one of her co-workers rather than her supervisor.  While Plaintiff and Turner share some common work experiences–both were fired and both were reprimanded for attendance problems–there are key differences between the two.  Plaintiff experienced an overall record which included a pattern of tardiness and no signs of immediate improvement even after receiving a reprimand (not to mention an express warning to avoid any further violations).  In contrast, Turner responded positively to her reprimand for attendance problems with only one attendance-related issue occurring thereafter (and, again, that was over three months after the reprimand was issued).  Therefore, because of the different quantity and quality of problems related to Turner's workplace

conduct, her work history is not nearly identical to that of Plaintiff.

### 3.  Tarakisha Hodo

Tarakisha Hodo was hired on November 15, 1999.  On July 27, 2000, she received a reprimand for being late twenty-one days (during the preceding six week period), and working less than eight hours per day without permission on twelve occasions.  On February 6, 2001–more than six months later–she received a reprimand for taking her lunch thirty minutes after it should have been taken, and for being away for forty minutes instead of the scheduled thirty minutes.  On June 4, 2001, she received another reprimand for continuing to be late five to eight days a pay period without permission.

On July 20, 2001, Hodo improperly processed two slides.  On July 25, 2001, she took a fifty minute lunch (instead of her scheduled thirty minutes) and worked twenty minutes overtime without permission.  LabCorp discharged Hodo the following week.  Unlike Plaintiff, Hodo was never placed on a PIP or Corrective Action Plan for any reason.

Hodo, like Turner, shares some commonality with Plaintiff.  Both were fired, reprimanded for attendance problems, and had other work deficiencies.  But their records differ in other significant respects such that they are not similarly situated.  For example, the sequence of their attendance and other work-related issues is strikingly different.  After Hodo's first reprimand in July 2000 for attendance problems, she showed signs of improvement.  She did not receive her second reprimand until more than six months later.  On June 4, 2001, roughly one month before her discharge, she was again reprimanded for continuing tardiness.  Plaintiff's record, on the other hand, shows that she was 1) counseled for low productivity and for not completing required paperwork on a timely basis and thereafter separately reprimanded (and placed on a half-day suspension) for low

productivity shortly after the onset of her employment; 2) continually counseled for excessive tardiness; 3) reprimanded for a combination of being tardy and working overtime without permission, warned that any future violations would result in her discharge, and placed on a Corrective Action Plan; and 4) finally was again late on eight occasions in the five week period immediately following her latest reprimand and her being placed on a Correction Action Plan. The sequence and degree of these multiple offenses culminated in her dismissal.

Based on the foregoing, the overall work histories of Plaintiff and Hodo do not meet the similarly situated test because of the marked differences in the quality and quantity of their respective conduct. Isolating attendance as the only issue for comparative analysis is not appropriate here because doing so ignores the other areas in which Plaintiff experienced difficulties (*e.g.*, productivity), but which Hodo did not. But even if such an examination is undertaken, it reveals that Hodo received a total of three reprimands for attendance problems and was discharged one month later for various reasons including attendance issues. The net difference between Plaintiff and Hodo with respect to attendance and tardiness issues, is that Hodo's personnel file contains one more written record before her termination than that of Plaintiff. Therefore, even in a vacuum, LabCorp's treatment of Hodo and Plaintiff, as it relates to attendance only, is not sufficiently different to suggest discriminatory treatment of Plaintiff because of her pregnancy, asthma or HIV status.[17]

### 4. Kendra Brown

Kendra Brown's work history includes a written counseling in May 2000 for attendance

---

[17]Ironically, if the shoe were on the other foot, and Hodo were attempting to split hairs, she could claim she was treated less favorably than Plaintiff. Compared to Plaintiff, Hodo was never put on a performance or corrective action plan, or provided with the same degree of progressive discipline (i.e., a suspension) before she was fired.

problems in April, a reprimand for inappropriate use of a work break on one occasion, and a three day suspension in July 2000 for not following proper procedures in processing specimens. After her suspension, Brown had no further disciplinary problems.

Plaintiff's history of work-related problems is significantly worse than Brown's. In particular, Brown's records show three separate violations or deficiencies without any repeated offenses and without any further disciplinary problems. In contrast, as already detailed, Plaintiff was repeatedly cited for instances of low productivity, tardiness, and working overtime without permission. Plaintiff and Brown are not similarly situated.

Therefore, the court finds that Plaintiff has failed to produce sufficient evidence of any similarly situated person who was treated more leniently than she, and Defendant has demonstrated its honest belief that none of the employees it retained[18] engaged in misconduct comparable to that Plaintiff was believed to have committed. *See Jones v. Bessemer Caraway Med Ctr.*, 137 F.3d at 1311-12 (absent showing by plaintiff of pertinent similarities, plaintiff's claim that he was similarly situated to an alleged non-minority comparator was negated). As a result, Plaintiff cannot establish a *prima facie* case of discriminatory termination under Title VII or the ADA, and therefore, summary judgment in favor of LabCorp is due to be granted as to those claims.

### C.    Evidence of Pretext

Alternatively, independent of her inability to establish a *prima facie* case, summary judgment in favor of LabCorp on Plaintiff's discriminatory discharge claims is appropriate, because Plaintiff cannot show the reasons given by LabCorp for terminating her employment are pretextual.

---

[18]Of course, the record reveals that LabCorp also discharged Hodo, albeit after an additional incident of tardiness. However, Hodo did not suffer from the same performance deficiencies as Plaintiff.

LabCorp's legitimate, nondiscriminatory reason for discharging Plaintiff is: "a history of low productivity, tardiness, and working overtime without permission, culminating in 8 tardies in the 5 weeks after receiving a reprimand for attendance problems and being placed on a Corrective Action Plan." (Doc. #20 at 6). "If the defendant articulates one or more [legitimate, non-discriminatory] reasons, the presumption of discrimination is eliminated and 'the plaintiff has the opportunity to come forward with evidence . . . sufficient to permit a reasonable fact finder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision.'" *Chapman v. AI Transport*, 229 F.3d 1012, 1024-25 (11th Cir. 2000) (citing *Combs v. Plantation Patterns*, 106 F.3d 1519, 1527-28 (11th Cir. 1997) (citations omitted)). "If the plaintiff does not proffer sufficient evidence to create a genuine issue of material fact regarding whether each of the defendant employer's articulated reasons is pretextual, the employer is entitled to summary judgment on the plaintiff's claim." *Chapman*, 229 F.3d at 1024-25 (citing *Combs*, 106 F.3d at 1529).

A plaintiff is not allowed to recast an employer's proffered nondiscirminatory reasons or substitute her business judgment for that of the employer. Provided that the proffered reason is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason. *Hammock v. Nexcel Synthetics, Inc.*, 201 F.Supp. 2d 1180, 1187 (N.D. Ala. 2002) (quoting *Chapman*, 229 F.3d at 1029 (citing *Alexander v. Fulton County*, 207 F.3d 1303, 1341 (11th Cir. 2000); *Combs*, 106 F.3d at 1541-43)). "It is not the court's role to second-guess the wisdom of an employer's decisions as long as the decisions are not [discriminatory]." *Alexander v. Fulton County*, 207 F.3d 1303, 1341 (11th Cir. 2000); *see also Combs*, 106 F.3d at 1541-43. The issue for the court is whether Plaintiff has adduced sufficient evidence from which a reasonable jury could conclude that LabCorp's

articulated reasons for firing Plaintiff are a pretext–a lie–to cover up intentional unlawful discrimination.  She has not.

In addressing the issue of pretext, the Supreme Court has stated:

Thus, a plaintiff's *prima facie* case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated. This is not to say that such a showing by the plaintiff will always be adequate to sustain a jury's finding of liability. Certainly there will be instances where, although the plaintiff has established a *prima facie* case and set forth sufficient evidence to reject the defendant's explanation, no rational factfinder could conclude that the action was discriminatory. For instance, an employer would be entitled to judgment as a matter of law if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred.

*Reeves*, 530 U.S. at 148.  Therefore, despite a plaintiff's efforts to demonstrate an issue of fact regarding the truthfulness of an employer's asserted justification for an adverse employment decision, judgment as a matter of law in favor of the employer would still be appropriate if the record:  1) conclusively demonstrates some other, nondiscriminatory basis for the decision; or 2) reveals only a weak issue of fact coupled with plentiful evidence that no illegal discrimination took place.

Plaintiff asserts that evidence of pretext exists because, prior to summary judgment, the reason given for Plaintiff's discharge was "tardiness" only, as opposed to the explanation offered at summary judgment:  "a history of low productivity, tardiness, and working overtime without permission, culminating in 8 tardies in the 5 weeks after receiving a reprimand for attendance problems and being placed on a Corrective Action Plan." (Doc. #20 at 6).  First, the argument is entirely wide of the mark because Plaintiff's own EEOC charge demonstrates that she understood she was terminated in part for performance deficiencies. *See* Ex. 10 to Opponent's Evidence

Submitted in Response to Exhibit A ("Opponent's Evidence). ("My employer created pretexts to criticize my work and threatened and harassed me on false claims of *poor work performance* in order to provide a pretext to terminate me. I claim that my termination was a result of discrimination based on race, pregnancy, and the disability of being HIV positive.") (emphasis added).[19]  Second, even if LabCorp had said initially Plaintiff was terminated for "tardiness," at best, this assertion creates only a weak issue of fact, and the record otherwise supports the conclusion as a matter of law that no illegal discrimination took place.

Plaintiff also argues pretext is demonstrated because she was similarly situated to, but treated differently than, the four employees discussed above. The court has already addressed these same arguments in the context of finding that Plaintiff has not established a *prima facie* case. For the same reasons, the court finds Plaintiff is not similarly situated to the four persons she claims to be her comparators.

Plaintiff also points to her performance appraisals in an attempt to establish pretext. (Doc. #24 at 36-37). Reviewing these appraisals in proper context shows that they do not create a material issue of fact. Moreover, Plaintiff's own assessment of her productivity or criticisms of LabCorp's

---

[19]LabCorp's EEOC response also makes clear that its position is–and has been–that Plaintiff was discharged for tardiness and performance problems:

> Contrary to her allegations, Ms. Watson was not discriminated nor retaliated against by LabCorp. Ms. Watson was counseled and reprimanded throughout her entire employment with LabCorp for failure to arrive at work on time *and failure to meet company performance standards*. Ms. Watson was given every opportunity to improve her *performance* and to follow company police; however, she failed to do so. Therefore, in accordance with LabCorp's Progressive Discipline (Exhibit VI) and Termination Police (Exhibit XVIII), LabCorp management had no alternative but to discharge her for violation of company policy.

(Ex. 34 to Opponent's Evidence) (emphasis added).

practices regarding enforcement against tardiness (Doc. #24 at 34) is immaterial to the pretext

analysis. *See Holifield*, 115 F.3d at 1565 ("The inquiry into pretext centers upon the employer's

beliefs, and not the employee's own perceptions of his performance.") (citation omitted). The crucial

examination at the pretext level is whether the employer has honestly explained its actions, not

whether the employer is "right":

> Federal courts "do not sit as a super-personnel department that reexamines an entity's
> business decisions. No matter how medieval a firm's practices, no matter how
> high-handed its decisional process, no matter how mistaken the firm's managers, the
> ADEA [, Title VII, § 1981, and the ADA do] not interfere. Rather, our inquiry is
> limited to whether the employer gave an honest explanation of its behavior."
> *Mechnig v. Sears, Roebuck & Co.*, 864 F.2d 1359, 1365 (7th Cir.1988) (citations
> omitted). "[F]or an employer to prevail the jury need not determine that the employer
> was correct in its assessment of the employee's performance; it need only determine
> that the defendant in good faith believed plaintiff's performance to be
> unsatisfactory...." *Moore v. Sears, Roebuck & Co.*, 683 F.2d 1321, 1323 n. 4 (11th
> Cir.1982) (emphasis in original). *See also Jones*, 874 F.2d at 1540; *Smith v. Papp
> Clinic, P.A.*, 808 F.2d 1449, 1452-53 (11th Cir.1987) ("[I]f the employer fired an
> employee because it honestly believed that the employee had violated a company
> policy, even if it was mistaken in such belief, the discharge is not 'because of race'
> and the employer has not violated § 1981.").

*Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir. 1991). Therefore, summary

judgment in favor of LabCorp is appropriate for the alternative reason that Plaintiff has produced

insufficient evidence from which a reasonable jury could find pretext. *See Carter v. City of Miami*,

870 F.2d  578, 585 (11th Cir.1989) ("[C]onclusory allegations of discrimination, without more, are

not sufficient to raise an inference of pretext or intentional discrimination where [an employer] has

offered . . . extensive evidence of legitimate, non-discriminatory reasons for its action.") (citation

omitted).

## III.   Plaintiff's Transfer Claim Under § 1981

Plaintiff's transfer claim under § 1981 fails because she cannot establish a *prima facie* case.

More specifically, Plaintiff has not identified a white employee who was treated differently than her. Plaintiff testified that it was her belief that an employee with a first name of Amanda was transferred into the Microbiology Department while Plaintiff was denied a transfer. This "belief" is inadequate to defeat summary judgment. It is not based on Plaintiff's personal knowledge, and further, LabCorp has established that it is undisputed that no one named Amanda was transferred into the Microbiology Department between 1999 and 2002.[20]  (Doc. #22 at Ex. 7 ¶ 3).  Therefore, no reasonable fact-finder could conclude that Plaintiff states a claim for discriminatory failure to transfer, and summary judgment in favor of LabCorp is due to be entered.

## IV.    Plaintiff's ADA Claims

As discussed in section I above, Plaintiff's ADA accommodation claim is barred because she failed to file a timely EEOC encompassing the claim.  As discussed in section II above, Plaintiff's discriminatory discharge claim under the ADA is due to be dismissed because she lacks of evidence of similarly situated persons who were treated more favorable than her.

Plaintiff's claims also fail for the alternative reason that she is not disabled within the meaning of the ADA.  To establish a *prima facie* case under the ADA, a plaintiff must show that she "(1) had, or was perceived to have, a 'disability;' (2) was a 'qualified' individual; and (3) was discriminated against because of her disability." *Carruthers v. BSA Advertising, Inc.*, No. 03-12308 (11th Cir. Jan. 21, 2004).  A plaintiff has a covered "disability" if she has a physical or mental

---

[20]There is evidence that an employee named Amanda transferred <u>out</u> of the Microbiology Department during this timeframe.  LabCorp hired Amanda Patterson ("Patterson") (formerly Amanda Littleton) on June 18, 2001 as a temporary laboratory assistant in the microbiology department.  AF No. 60.  Thereafter, on July 11, 2001, Patterson applied for a permanent laboratory assistant position in the cytology department (AF No. 61) and received the cytology laboratory assistant position on August 13, 2001.  AF No. 62.  Patterson resigned her employment on September 18, 2001.  AF No. 63.

impairment that substantially limits one or more of her major life activities. 42 U.S.C. § 12102(2).

Moreover, as for Plaintiff's efforts to fall within the category of being perceived as having a

disability, these must similarly fail because Plaintiff has not adduced any evidence from which a

reasonable jury could conclude that LabCorp perceived Plaintiff as being limited in a major life

activity.

### A.      Asymptomatic HIV

Plaintiff's basis for claiming disability due to her HIV-positive status is that her condition

substantially limits her ability to reproduce. However, as a factual matter, Plaintiff conceived and

gave birth to her son approximately 2 ½  years after testing positive for HIV.  Therefore,

asymptomatic HIV did not limit her ability to reproduce. *See Waddell v. Valley Forge Dental

Assocs., Inc.*, 276 F.3d 1275, 1279 n.4 (11th Cir. 2001) (noting that Supreme Court in *Bragdon v.

Abbott*, 524 U.S. 624, 641-42 (1998) declined to address whether HIV is a disability per se, which

"arguably suggest[s], at least implicitly, that the preferred method is to address whether an

impairment causes a substantial limitation upon a major life activity on a case-by-case,

individualized basis" and citing two other Supreme Court cases utilizing individualized analysis).

Moreover, the evidence adduced by Plaintiff is insufficient to show that the persons involved in the

decision to discharge her had actual or constructive knowledge of her asymptomatic HIV condition,

which is also fatal to an ADA claim.[21]

---

[21]Unlike Plaintiff's asthmatic condition (Doc. #24 at 10 ¶¶ 50-51), there is nothing in the
record to suggest that anyone in management knew Plaintiff was HIV positive.  There is no evidence
to show when or even if Ms. Griffith or  Ms. Shedrick ever saw Plaintiff's application for short term
disability requested leave time beginning February 4, 2002, due to "Pregnancy. Complications:
Asthma and HIV."  (Doc. #24 at 13 ¶ 75).  Plaintiff apparently believes her HIV status was known
to LabCorp because of the medication she took that was paid for by her workplace insurance plan.
*See, e.g.,* Ex. 10 to Opponent's Evidence.  However, LabCorp has consistently maintained (even

### B.    Asthma

Plaintiff also claims that her asthma is a disability within the meaning of the ADA because it limits her ability to work, climb stairs, and run.  Plaintiff is not substantially limited in her ability to work because she was working for LabCorp while she had asthma, and, after being fired, she began working for another employer in August 2002.  *See Sutton v. United Air Lines*, 527 U.S. 471 (1999) (stating a plaintiff is substantially limited in her ability to work if she cannot perform "either a class of jobs or a broad range of jobs in various classes…."); *see also Heilweil v. Mount Sinai Hosp.*, 32 F.3d 718, 723-24 (2d Cir. 1994) (holding a plaintiff's asthma is not a disability under Rehabilitation Act because it only prevented her from working in one area of her place of employment and did not block her from other types of employment).[22]

During her deposition, Plaintiff indicated that her asthma substantially limits her in her ability to climb stairs and to run.  While neither side has pointed to a binding case which addresses whether these activities constitute major life ones, persuasive authority indicates that they are not:

> It first should be noted that EEOC regulations and interpretive guidance do not provide that climbing is a major life activity.  Moreover, this court agrees with the Fifth Circuit, which held that "climbing is not such a basic, necessary function and this court does not consider it to qualify as a major life activity under the ADA."

*Evans v. Pemco Aeroplex, Inc.*, 1998 U.S. Dist. LEXIS 22954, at *23 (N.D. Ala. 1998) (quoting *Robinson v. Global Marine Drilling Co.*, 101 F.3d 35, 37 (5th Cir. 1997)); *see also Black v. Roadway Express*, 297 F.3d 445, 450 (6th Cir. 2002) (agreeing with trial court that climbing is not

before this case was filed) that it did not have knowledge of Plaintiff's HIV status because her insurance claims were kept confidential by the claims administrator.  (*See* Ex. 34 to Opponent's Evidence at 4).

[22]"Cases decided under the Rehabilitation Act are precedent for cases under the ADA, and vice versa."  *Cash v. Smith*, 231 F.3d 1301, 1305 n.2 (11th Cir. 2000) (citation omitted).

a major life activity); *Otting v. J.C. Penney Co.*, 223 F.3d 704, 710 (8th Cir. 2000) (holding climbing ladders is not a major life activity); *Weber v. Strippit, Inc.*, 186 F.3d 907, 914 (8th Cir. 1999) (holding climbing stairs is not a major life activity).[23]

Similarly, several courts have determined that running is not a major life activity under the ADA.

> The examples [of major life activities] set forth by the EEOC all suggest basic human activities necessary to functioning in the world easily and without hassle, and which the majority of the population is able to do. Running, on the other hand, is not necessary to functioning easily in the world, but is usually done out of choice, as recreation, or in rare exigent circumstances. Many people are unable to run as a result of various common joint or back injuries, or from being overweight, or from a desire for the sedentary life. Yet most are able to function in life as easily as those who, if they felt the need, could run. Running, therefore, should fall outside the class of tasks considered major life activities.

*Boyd v. Borg-Warner Protective Servs., Inc.*, 1999 U.S. Dist. LEXIS 13974, at *7-8 (S.D. Fla. 1999); *see also Black*, 297 F.3d at 450 (agreeing with trial court that running is not a major life activity); *Ruggles v. Keebler Co.*, 224 F. Supp. 2d 1295, 1301 (D. Kan. 2002) (holding running is not a major life activity); *Piascyk v. City of New Haven*, 64 F. Supp. 2d 19, 26-27 (D. Conn. 1999), *aff'd*, 2000 U.S. App. LEXIS 9969 (2d Cir. 2000) (same); *Vaughnes v. UPS*, 2000 U.S. Dist. LEXIS 11474, at *14-15 (S.D.N.Y 2000) (same). The court finds these cases persuasive and therefore, also finds Plaintiff's ADA claim, based on her asthma as the qualifying disability, fails as a matter of law because her asthma does not substantially limit her in a major life activity.

---

[23] A plaintiff in an employment discrimination case maintains the ultimate burden of proving that the adverse employment decision was made because of intentional discrimination. *See Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000); *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 509-12 (1993); *Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1184 (11th Cir. 1984). Summary judgment is also due LabCorp for this additional reason: there is simply nothing in the record to suggest the company was in any way motivated to act against Plaintiff because of her asthma.

## CONCLUSION

For the reasons set forth above, Defendant's Motion for Summary is due to be granted.  The court will enter an Order consistent with this Memorandum Opinion dismissing all of Plaintiff's claims with prejudice.

**DONE** and **ORDERED** this _____10th_____ day of August, 2005.

**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE